SHEPHERD INTELLIGENCE SYS-
TEMS, INC. f/k/a Jet Security
Systems, Inc., Plaintiff,

v.

DEFENSE TECHNOLOGIES, INC.,
MicroLogic, Inc. and Jack Frost, Defend-
ants.

Civ. A. No. 87–1101–Y.

United States District Court,
D. Massachusetts.

Dec. 20, 1988.

David Berman, Berman and Moren, Medford, Mass., for plaintiff.

Judy Gail Dein, Ian Crawford, F. Anthony Mooney, Hale & Dorr, Boston, Mass., for defendants.

YOUNG, District Judge.

This matter is before the Court on the Motions to Abstain and Either Dismiss or Stay This Action and the Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief May be Granted, of defendants Defense Technologies, Inc. ("Technologies"), MicroLogic, Inc., and Jack Frost. Because affidavits and other supporting materials have been filed in this case, the Court treats the Motions to Dismiss as ones for summary judgment. Fed. R.Civ.P. 12(b)(6); *Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 37 (1st Cir.1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 121 (1985).

I. *The Motions to Dismiss Pursuant to California Motor Transport Co. v. Trucking Unlimited*

■ The Court DENIES the defendants a grant of summary judgment in this matter. The gravamen of the complaint of Shepherd Intelligence Systems, Inc. ("Shepherd") is that Technologies and MicroLogic violated antitrust laws by filing baseless state law actions against it.[1] Shepherd can prevail in this matter only if it establishes that the underlying state court litigation is baseless and a sham pursuant to the rule of *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). *California Motor Transport* teaches that lawsuits and administrative claims cannot form the basis

of an antitrust claim unless they are sham actions.

While it is well established that "a successful claim cannot be 'sham,'" *WIXT Television, Inc. v. Meredith Corp.*, 506 F.Supp. 1003, 1032–33 (N.D.N.Y.1980) (and cases cited therein), in this case Technologies and Micrologic merely claim that thus far they have won certain discovery battles and two preliminary injunctions in the Massachusetts Superior Court. Such a record is simply insufficient at this point to establish as matter of law that those state suits are not baseless and thus that no genuine issue of material fact exists on this point. *But see Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir.1984) (Kennedy, J.). Without in any way disparaging the Massachusetts Superior Court, this Court knows from personal experience on both the Superior Court and the federal bench that the rough justice possible in a preliminary injunction hearing cannot necessarily ensure that an action is not a sham, even though a plaintiff wins preliminary relief. Therefore, summary judgment pursuant to *California Motor Transport* would be inappropriate.[2]

II. *The Motion for Abstention*

As a general matter, abstention "is a sharply circumscribed exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Corporacion Insular de Seguros v. Garcia*, 680 F.Supp. 476, 478 (D.P.R. 1988) (quoting *Colorado River*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)).

---

**1.** The Court acknowledges that Shepherd also alleges that Technologies and Micrologic sought to capitalize further on the effects of the state court litigation by having Technologies' marketing consultant, the defendant Jack Frost, contact prospective customers of Shepherd and warn them that due to the injunctive relief Technologies and Micrologic expected to gain from the state court litigation, Shepherd could ensure neither delivery of its product, nor service.

**2.** The Court observes that in *California Motor Transport* the alleged monopolistic practices involved only sham claims. Here, in addition to

charging sham lawsuits, Shepherd also asserts, as a further monopolistic practice, that Frost attempted to discourage prospective customers from dealing with Shepherd. Thus, a question potentially arises whether Shepherd's allegations about Frost move this case outside the *California Motor Transport* paradigm so that even should Technologies and Micrologic establish that their state suits are not sham, they would still be denied summary judgment. The Court need not, and does not, decide this matter at this time.

The defendants move for abstention under two of its many forms. The first is based on the "exceptional circumstances" doctrine ennunciated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), as amplified by *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court notes that the underlying state court actions were filed over two and one-half years ago. Because one consideration in deciding whether to abstain and stay federal court proceedings is the progress that has been made in the state and federal court proceedings, *Moses H. Cone Memorial Hosp.*, 460 U.S. at 15–16, 21–22, 103 S.Ct. at 936–937, 939–940 the Court orders the parties to file papers within twenty (20) days detailing where matters stand in each of the pending state court matters.

■ The Court notes that the defendants move that it abstain pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its recent progeny, *Pennzoil Co. v. Texaco*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Such abstention would be improper. Those cases required abstention from enjoining a state criminal prosecution and a state's judgment enforcement mechanism respectively. As the *Pennzoil* court held, abstention is proper to avoid interfering with state criminal prosecutions in general, or with "certain civil proceedings [where] the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government". 107 S.Ct. at 1526. Here, of course, the Court is not asked to enjoin any party from enforcing a state court's judgment as was the case in *Pennzoil*, *id.* at 1523, but merely to permit this case to proceed and therein, in some measure, treat issues now pending before a state court. Thus, the danger to comity is considerably muted in the instant case.[3]

The defendants nevertheless assert that *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980) requires this Court to abstain pursuant to *Younger*. The First Circuit in *Landrigan* required a district court to stay a federal case involving a plaintiff's Section 1983 civil rights claim, which essentially alleged that the defendant police officers had arrested the plaintiff without probable cause for driving too fast for conditions, pending the resolution of his state court criminal trial on that charge. The court reasoned that "[t]he validity of the state charge would be substantially undermined" by a decision in the federal case, even though no result in the federal case could bar the state from prosecuting. *Id.* at 743.

■ *Landrigan*, involving as it did an underlying state criminal case, is distinguishable from the instant case. *Younger* stands for the proposition that a federal court should never enjoin a state criminal action except in extremely limited circumstances involving bad faith, harassment or other unusual circumstances. *Younger*, 401 U.S. at 54, 91 S.Ct. at 755. Thus, the great deference of federal courts to state criminal proceedings underlying *Younger* made it a small step for the First Circuit to extend *Younger* abstention to criminal cases which would not block, but could seriously undermine, state criminal prosecutions.

This Court does not deny that a ruling in the instant case that the state court actions brought by Technologies and Micrologic were, in fact, sham lawsuits would undercut those actions in a manner similar to that feared by the *Landrigan* court in the criminal context. This Court rules, nevertheless, that abstention is unwarranted. The First Circuit has observed that *Pennzoil* and other Supreme Court decisions, while extending *Younger* abstention to the realm of civil cases, have done so only in cases that "featured federal plaintiffs who had lodged broad constitutional attacks on the legitimacy of state civil proceedings

---

**3.** The Court notes that the *Pennzoil* court also found *Younger* abstention proper in that case "to avoid unwarranted determination of federal constitutional questions." *Id.* at 1526. No such constitutional issues are raised in this case.

instituted against them. In each case, the federal court was asked to enjoin a contemporaneous state civil proceeding pending against the federal plaintiff; the relief sought by the federal plaintiff was directed specifically at the pending state proceeding." *Kercado–Melendez v. Aponte–Rogue,* 829 F.2d 255, 259 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988); *see also Corporacion Insular de Seguros v. Garcia,* 680 F.Supp. 476, 480 (D.P.R.1988). In addition, *Pennzoil* warns federal courts to tread carefully when called upon to take action that would interfere with the enforcement of a state court's orders and judgments. 107 S.Ct. at 1527. In this case, no constitutional attack is made on the state court proceedings, nor is this Court asked to enjoin those proceedings. Moreover, no action that the litigants could request this Court to take in this case could conceivably interfere with a state court's enforcement of its orders and judgments. Thus, no extension of the *Younger-Pennzoil* doctrine to the present fact pattern is warranted.

### III. *The Motion to Dismiss for Failure to State a Claim*

The defendants also move to dismiss the plaintiff's antitrust count for failure to state a claim upon which relief can be granted. Such a motion will not be granted unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of their claim which would entitle [them] to relief." *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957]). However, the First Circuit has made it plain that vague pleadings lacking the requisite factual allegations of an antitrust claim are insufficient to uphold a cause of action. *Gilbuilt Homes, Inc. v. Continental Homes of New England, A Division of Wylain, Inc.,* 667 F.2d 209 (1st Cir.1981); *Americana Indus. v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625 (1st Cir.1977).

■ The defendants find fault with three aspects of the plaintiff's antitrust count. First, the defendants allege that the count must be dismissed to the extent it is brought under 15 U.S.C. sec. 1 because it fails to allege a combination or conspiracy. The Court agrees that the pleadings do indeed fail to state a cause of action pursuant to sec. 1. Shepherd nowhere in its pleadings even mentions the words "combination" or "conspiracy." It does assert that Technologies induced MicroLogic to file a suit against a former MicroLogic employee. However, to assert that a combination or conspiracy existed within the meaning of this section, a party must plead a meeting of the minds of two or more of the putative members to accomplish a common purpose. *E.g., American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946); *Aquachem Co. v. Olin Corp.,* 699 F.2d 516, 520 (11th Cir.1983); *cf. United States v. American Column and Lumber Co.,* 263 F. 147, 151 (6th Cir.1920) (holding that to win a preliminary injunction pursuant to section 1, a plaintiff must establish a meeting of the minds), *aff'd,* 257 U.S. 377, 42 S.Ct. 114, 66 L.Ed. 284 (1921). This, Shepherd has failed to do.

■ Shepherd's allegation that Technologies' marketing consultant, Jack Frost, together with Technologies itself, informed prospective customers that Shepherd soon would be unable to sell or service its product, when read in the context of the entire complaint, arguably might allege enough to survive a motion to dismiss were it not for the fact that the pleadings are unclear as to whether Frost is an agent of Technologies. It is axiomatic that an employer may not conspire with its agent because the acts of the agent are the acts of the employer. *See, e.g., Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). While Frost may well be Technologies' agent, it is conceivable that Shepherd, in good faith, could argue that he is not, *see Salem Bldg. Supply Co. v. J.B.L. Constr. Co.,* 10 Mass. App.Ct. 360, 364–65, 407 N.E.2d 1302 (1980) (holding that facts alleged in an affidavit

warrant, but do not require, a finding that a party's consultants were its agents), and that thus a conspiracy was possible between Frost and Technologies.

The defendants also argue that Shepherd has failed to plead substantial market power in the relevant market as required by sec. 1 or a dangerous probability of success in monopolizing the relevant market as required by sec. 2. *E.g., CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 851 (1st Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *Americana,* 556 F.2d at 627–28. The Court agrees. Although Shepherd conclusorily asserts that Technologies possesses a monopoly, *e.g.,* Complaint at paras. 5I, 13, 15, the underlying facts asserted strongly suggest that it does not. Shepherd alleges that it believed that Technologies was grossly undercapitalized and poorly managed and that it subsequently produced a product that functioned poorly and frequently broke down. Complaint at paras. 5B–D.[4] Such facts hardly seem consistent with allegations of monopoly power and the dangerous probability of success in monopolizing the relevant market.

Nor is the relevant market ever defined as required. *E.g., Gilbuilt,* 667 F.2d at 211. One might generously infer from the pleadings that Technologies sold its product to the owners of corporate jets who sought an anti-terrorist intrusion detection device for parked aircraft. Complaint at paras. 4, 5A. What is unclear is whether its geographic market is Massachusetts, New England, the United States or the entire world.

Rather than dismiss this count, and subsequently the entire complaint,[5] this Court allows Shepherd thirty (30) days from the date of this Memorandum and Order to amend its complaint, if it can, to comport with the requirements outlined herein. Should Shepherd fail to file an amended complaint, the Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief May be Granted will be granted at the expiration of the thirty day period. Should Shepherd so file, the Motion to Dismiss will be denied without prejudice to its being renewed based on the pleadings of the Amended Complaint.

## IV. *The Motions for Attorney's Fees*

Shepherd's Motion for Attorney's Fees in opposing these motions is dismissed. The Court does not doubt that these motions were brought in good faith; indeed, they have proven to be somewhat successful thus far.

SO ORDERED.

---

4. The fact that Technologies apparently manufactures the only computer-driven anti-intrusion device on the market is insufficient to establish market power due to the lack of a market definition. As the court in *Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982) held, in defining a market for antitrust purposes, the proper methodology considers "the interchangeability of use or the cross-elasticity of demand for potential substitute products." Thus, Shepherd's present assertions are insufficient unless Shepherd also asserts why other security devices are not adequate substitutes for its device.

5. Both parties agree that dismissal of the antitrust count would require dismissal of this entire action as the other counts are all pendent state claims. *See, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966).